MOTOR TRANSPORT COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS OF NEW JERSEY, CENTRAL TRANSPORTATION COMPANY AND TRENTON AND MERCER COUNTY TRACTION CORPORATION, DEFENDANTS.

Argued October 6, 1927—Decided February 25, 1928.

Before Justices TRENCHARD, KALISCH and KATZENBACH.

For the prosecutor, *Geraghty & Weelans* and *Osborne, Cornish & Scheck.*

For the defendant Central Transportation Company and the Trenton and Mercer County Traction Corporation, *Edward L. Katzenbach.*

For the defendant Board of Public Utilities Commissioners, *John O. Bigelow.*

The opinion of the court was delivered by

TRENCHARD, J.   The Motor Transport Company, the prosecutor herein, and its predecessors, Israel Weisberg and Hyman Gordon, for the past five years have operated a bus line between Trenton and Hightstown.

The prosecutor's buses, two in number, were operating under a restriction or condition that the buses "shall not take on passengers who begin and end their trips between the bus terminal in Trenton and a point one mile east of Hamilton Square," known as the old toll gate on Nottingham Way. Thereunder a bus traveling from Hightstown to Trenton takes on no passengers after it leaves the toll gate, although it discharges passengers between the toll gate and Trenton, and a bus going in the opposite direction cannot discharge passengers in Trenton or between Trenton and the toll gate, although it picks them up.   In other words, in whichever way the bus is running, each passenger must either begin or end his trip between the toll gate and Hightstown, the buses doing no purely local business in Trenton or west of the toll gate.

This restriction (which originated in the ordinance of the city of Trenton authorizing the operation of prosecutor's buses) was imposed upon the prosecutor's predecessors with their consent by the public utility commission pursuant to section 24 of the Public Utility act, which reads: "* * * And the board shall have power * * * to impose such conditions as to construction, equipment, maintenance, service or operation as the public convenience and interests may reasonably require." *Pamph. L.* 1911, *p.* 384.

On October 14th, 1926, the prosecutor made application to the board to rescind the restriction above mentioned, so that the company's two buses might do a local business in Trenton and west of the toll gate, in addition to their through business between Trenton and Hightstown and intermediate points.

On April 22d, 1927, after hearing, the board amended the restriction so as to substitute for "a point one mile east of Hamilton Square," the intersection of Burtus avenue and Nottingham Way in Hamilton township. Burtus avenue is about two-thirds of a mile west of the toll gate, so that the result of this amendment was to grant the petition of the Motor Transport Company in so far as it related to the section of the route between the toll gate and Burtus avenue, and to deny the petition in so far as it related to that part of the route between Burtus avenue and the terminus in Trenton.

This is the order now brought up for review by this writ.

As we have pointed out, this bus line was established and operated primarily for the convenience of those living along, or having occasion to journey to, that part of the route of the bus line east of the toll gate.

The first subject of consideration, therefore, is how would the removal of the restriction affect the convenience of that part of the public.

Obviously, their service would not be improved in the slightest. The prosecutor operates only two buses, has permits for two only, and does not appear to contemplate any more. On the contrary, local business in Trenton and west of the toll gate might seriously interfere with the service rendered the people for whom primarily this line was established. Intending passengers from Trenton to Hightstown at certain hours, if local business were permitted, would likely find the bus filled to capacity with local passengers bound for the easterly part of Trenton or the westerly part of Hamilton township, and travelers from Robbinsville (six miles west of Hightstown) to Trenton would likely find the bus crowded west of the toll gate.

Since Trenton is the center of population in its vicinity, most of the passengers on the outbound trip board the bus in

Trenton, and on the inbound trip most of them are there discharged. But outside of Trenton the passengers enter the bus or alight from place to place between the toll gate and Hightstown, so that the peak load is carried between Trenton and the toll gate. It is on this part of the trip, already carrying the peak load, that the prosecutor wishes to be allowed to do more business.

On the examination of Mr. Weisberg, the president of the prosecutor, he was asked: "Are your buses filled? A. Between one mile east of Hamilton Square and Trenton."

We, therefore, believe that the board was quite justified in considering that the convenience of the public, for whom this bus line was primarily established and now serves, would have been affected adversely by granting the petition of the prosecutor.

But, of course, the convenience of the public west of the toll gate must be considered. If there is not sufficient transportation service in this locality, and the situation would be improved by allowing the prosecutor to accept local traffic, then, possibly, its petition might well have been granted.

Now, the Trenton and Mercer County Traction Corporation operates a trolley line between State and Broad streets in Trenton and Hamilton Square, one mile west of the toll gate. Numerous cars run on this line. The Central Transportation Company, a subsidiary of the traction corporation, operates a bus line known as route A between Perry street, Trenton, and the intersection of Hamilton avenue and Nottingham Way. The intersection of Hamilton avenue and Nottingham Way is three miles west of the toll gate. These buses run every thirty minutes during the rush hours and every hour during the remainder of the day. The Central Transportation Company operates another bus line between Perry street, Trenton, and the hamlet of Allentown, via the toll gate, on a two-hour schedule.

In comparison with the above, it may be noted that the prosecutor's buses run on the average of about every three hours.

In the face of these facts, the prosecutor did not even attempt to prove that public 'convenience in Trenton or west

of Hamilton Square would be served by permitting it to do local business, but confined its evidence, as we understand it, to the stretch of one mile betwen Hamilton Square and the toll gate.

Mr. and Mrs. Fouratt testified that they lived at Nottingham Way and Crest avenue, between Hamilton Square and the toll gate; that in order to get to Trenton they had to walk half a mile west to Hamilton Square to get a trolley car, a half a mile east of the toll gate for prosecutor's bus, or else take a Central Transportation bus in front of their house.

Obviously, people living on this stretch of one mile would have been convenienced by lifting the restriction as to that mile, but would not have been convenienced by granting the petition of the prosecutor *in toto*. The board, in order to meet this situation, revoked the restriction between the toll gate and Burtus avenue. With this change, a person living in the middle of the sector between Burtus avenue and Hamilton Square is within three hundred yards of the end of the trolley line and the same distance from prosecutor's bus stop at Burtus avenue, and can get a Central bus at his door.

Of course, if the route traveled by the prosecutor's buses were sparsely populated, so that increased revenue were necessary to make it worth while for prosecutor to continue its service, then the rescinding of the restriction in question might well be necessary for the public convenience, in order that service be continued. However, no evidence at all was submitted by the prosecutor to this effect as we see it. We only know that its buses were well filled betwen Trenton and the toll gate.

At the hearing before the board the prosecutor seemingly gave little attention to public convenience, but relied primarily on this proposition: The prosecutor's line was established in 1922; two years later the Central Transportation Company inaugurated its service between Trenton and Allentown, paralleling the line of prosecutor from Trenton to Robbinsville; this line was originally subject to the same restriction as the prosecutor against local service between its terminus in Trenton and the toll gate on Nottingham Way; in 1925 the board revoked this restriction on the Allentown

line. Prosecutor contends that the restriction should be revoked as to it, so as to put it on a parity with the Allentown line, but, obviously, this cannot be done ragardless of public convenience.

There were, however, certain special circumstances applicable to the Allentown line and not applicable to prosecutor's line. Allentown is a small hamlet, much smaller than Hightstown. When the board was considering the application of the Central Transportation Company to rescind this restriction, Mr. Weisberg, president of the present prosecutor, testified in effect that it is not a paying proposition for the Central Transportation Company to operate to Allentown because the population is so small that a "bus will never pay." Now, it is to be borne in mind that it is the duty of the board to protect from unreasonable and destructive competition existing facilities which are actually serving the public, so that the public may continue to have the benefit of such service. *Hunter* v. *Board of Public Utility Commissioners,* 1 *N. J. Mis. R.* 408. It was necessary, then, to raise the restriction on the Allentown bus in order that it might obtain additional revenue and continue to serve the people of Allentown.

Furthermore, it appeared that the Central Transportation Company was operating a line in Trenton (route A) over the same streets as their Allentown bus, as far as the intersection of Hamilton avenue and Nottingham Way, and that, during certain times of the day, there are so many local passengers desiring to ride on these streets as to require an additional bus, which would not be necessary if the Allentown bus, operating over the same streets, were permitted to handle these local passengers.

These considerations do not apply to the prosecutor's bus line. And in all the circumstances the question properly before the board was how to promote the service of the public. Since it appears from the evidence that the restriction which the board refused to rescind was one reasonably required for the convenience and interests of the public concerned in the whole transportation field of both lines, the order of the board under review will be affirmed, with costs.